8103-3

DeOrchis, Wiener & Partners, LLP
61 Broadway, 26th Floor
New York, NY 10006-2802
(212) 344-4700

Attorneys for Plaintiff
UNION INSURANCE COMPANY LTD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNION INSURANCE COMPANY LTD.,

                Plaintiff,

-against-

AMERICAN BUREAU OF SHIPPING,

                Defendant.
------------------------------------------------------------X

ECF CASE

07 Civ. 3322 (LBS)

**AMENDED COMPLAINT**

Plaintiff UNION INSURANCE COMPANY LTD. ("UNION"), by and through its attorneys DeOrchis, Wiener & Partners, LLP, allege upon information and belief as follows for their Amended Complaint against Defendant American Bureau of Shipping.

### Jurisdiction and Parties

1. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h). The Honorable Court has subject matter jurisdiction under Article III, Section 2, of the United States Constitution and 28 U.S.C. § 1333.

2. This Court also has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 (2) because this action is between a foreign party, Plaintiff, and a citizen of the State of New York, Defendant, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3. At all times material hereto, UNION INSURANCE COMPANY, LTD. ("UNION") was and is a publicly traded insurance company existing under the laws of Taiwan, R.O.C. and having its principal place of business in Taipei, Taiwan, R.O.C.

4. At all times material hereto, AMERICAN BUREAU OF SHIPPING ("ABS") was and is a not-for-profit corporation organized and existing by special act of the New York State legislature with offices and principal places of business at ABS Plaza, 16855 Northchase Drive, Houston, Texas 77060, 45 Eisenhower Drive, 1st Floor, Paramus, New Jersey 07652 and 45 Broadway, New York, New York 10006-3739.

5. At all times material hereto, ABS was and is engaged in the business of determining the condition of vessels and the fitness of vessels for their intended purposes through a procedure called classification. In the process of classification, ABS technically reviews and approves plans, specifications and related documents for particular vessels and tests, inspects and surveys the vessels and their appurtenances as to their design, construction, and operational maintenance for compliance with standards, known as Rules, established by ABS. Vessels determined by ABS to be in compliance with ABS Rule requirements are issued documents certifying their compliance with ABS Rules and their classification, and the vessels are publicly listed in an "ABS Record" of vessels in the ABS classification "society." Once the vessel is in service, ABS carries out a clearly specified program of periodical class surveys to verify that the vessel continues to meet the relevant rule conditions for continuation of class.

6. At all times material hereto, ABS was and is also engaged in the business of determining the compliance of vessels with international and governmental design, construction, safety and maintenance requirements, otherwise known as statutory

requirements, imposed by the flag states under which the vessels are registered. ABS is empowered by various governments to conduct technical plan review and testing, survey and inspection of vessels to verify that their design, construction, safety and maintenance meet the statutory requirements of the flag state under which the vessels are registered. ABS is also empowered by these various governments to issue documents on their behalf certifying compliance with the applicable statutory requirements.

7. In or about October 2001, ABS performed and completed a Dry Docking Survey of the vessel *CAPE AFRICA*, a 1991 Cape-Size bulk carrier of 149,533 DWT, to verify compliance with the relevant statutory requirements and ABS Rules.

8. ABS issued a Class Certificate for the *CAPE AFRICA* on or about January 21, 2002, certifying that the vessel was fully in compliance with all applicable ABS Rules.

9. Thereafter, ABS attended onboard and surveyed the *CAPE AFRICA* on multiple occasions in order to determine compliance with ABS Rules and statutory requirements and did maintain continued classification of the vessel and issue all necessary ABS class and statutory documentation and certificates.

10. In or about November 2003 ABS conducted a hull thickness gauging survey and review and/or accepted the results of a hull thickness gauging survey and review conducted by other surveyors and the qualifications of the other surveyors and determined that this hull gauging survey and review verified that the *CAPE AFRICA* was in compliance with ABS Rules and/or statutory requirements and as verifying that the *CAPE AFRICA* was otherwise fit for its intended service.

11. ABS is and was at all times material hereto aware that maintaining continued classification of the vessel and the vessel's compliance with all applicable ABS Rules and statutory requirements is a requirement of hull and machinery insurers, known as "Hull Clubs" and liability insurers, known as P&I Clubs, in order to provide insurance coverage for vessels such as the *CAPE AFRICA*.

12. ABS is and was at all times material hereto further aware that, as of April 24, 2004, the *CAPE AFRICA* was insured in respect to her hull and machinery, including associated salvage of same, by UNION.

13. ABS is and was at all times material hereto further aware that UNION, as the hull and machinery insurer of the vessel, would rely upon the purported fact that the *CAPE AFRICA* was classed by ABS and certified by ABS to be in continuing compliance with ABS Rules and statutory requirements, would rely upon ABS properly and timely surveying the *CAPE AFRICA and* applying its own Rules and applicable statutory requirements in doing so, and would and did have access to and rely upon the accuracy, veracity, and propriety of all documentation issued by ABS verifying the vessel's classification status and compliance with ABS Rules and statutory requirements.

14. At all times material hereto, UNION did reasonably rely upon documentation issued by ABS verifying that and the purported fact that the *CAPE AFRICA* was classed by ABS and in compliance with ABS Rules and statutory requirements as determined by ABS, as well as ABS' periodic survey and inspection timetable, when it made the determination to insure the *CAPE AFRICA* under the Institute Time Clauses Hull policy effective during all material times hereto.

15. Although ABS imposed a March 31, 2004 deadline for completing the next dry docking survey, ABS or surveyors acting on behalf of ABS performed a cursory and inadequate survey of the vessel on April 6, 2004 and, without verifying the structural integrity of the vessel, its fitness for an ocean going voyage or compliance with ABS Rules or statutory requirements, arbitrarily extended the time for dry docking survey until June 30, 2004.

16. On April 10, 2004, the vessel departed Ponta Da Madeira, Brazil bound for Kashima, Japan with a full load of iron ore.

17. As the vessel neared the Cape of Good Hope, it encountered typical and expected weather conditions

18. Although the weather conditions should not have been a threat to a staunch, tight and seaworthy vessel, certified to be in compliance with ABS Rules and applicable statutory requirements, on or about April 26, 2004, a hole nevertheless developed in the port side shell plating of hold number 3 below the water line.

19. The vessel immediately diverted to Cape Town, South Africa.

20. On or about April 28, 2004, the crew abandoned ship.

21. The vessel owner entered into a Lloyds Open Form Salvage Agreement with a salvor, Smit Amadla ("Smit").

22. Smit removed the cargo, effected temporary repairs to the shell plating and towed the vessel to False Bay for survey.

23. Upon post-casualty inspection and thickness measurements of the vessel, it was determined that the entire shell plating, measuring 24m long by 8m high, on the port side of hold number 3 had become detached from the framing and structural members of

5

the vessel due to substantially inadequate, defective, thinned and weakened structural and securing members and shell plating.

24. After referral to mediation, the salvage claim was settled for $15,295,644.24, which amount was paid by UNION to the salvor, Smit, together with legal fees and expenses.

## COUNT I
## NEGLIGENCE

25. UNION repeats and re-alleges each and every allegation set forth in paragraphs 1 through 17 and incorporates them herein by reference.

26. ABS owed a duty of reasonable care to UNION in performing its classification and statutory services for the *CAPE AFRICA*, including plan review and approval, periodic survey and inspection, the issuance of class and statutory certificates and other documentation, and notification of non-compliance with ABS Rules and statutory requirements. ABS was aware at all times material hereto that its failure to the aforesaid classification and statutory services with reasonable care could have resulted in injury and loss to property and life and pecuniary damages to UNION or for which UNION could be liable.

27. ABS breached its duty to exercise reasonable care by, *inter alia*: (a) failing to maintain appropriate Rules for the design, construction, maintenance and survey of bulk carriers; (b) performing negligent surveys and inspections of the vessel; (c) postponing the dry dock survey without thorough survey, inspection, testing, thickness measurements of the vessel and review of its maintenance records; (d) extending the dry dock survey in violation of ABS Rules;(e) issuing inaccurate, false, misleading and improper certificates and other documentation relating to the condition of the vessel and

its compliance with ABS Rules and statutory requirements; and (f) failing to place the vessel owner or Union on notice of the vessel's non-compliance with ABS Rules and statutory requirements and the postponement of the dry-docking survey.

28. Had ABS advised UNION of the true nature and condition of the *CAPE AFRICA* on or before April 2004, or that the dry-docking survey was postponed without a proper survey and inspection of the vessel, UNION would not have provided insurance coverage to the vessel.

29. ABS' acts, omissions, fault, negligence, and breach of its duties resulted in damages to UNION in the amount of $15,295,644.24, as near as can now reasonably be estimated, plus reasonable attorneys' fees, costs, expenses, and interest.

30. As a result of the acts, omissions, fault, negligence, and breach of duties by ABS, UNION is entitled to recover damages from ABS.

## COUNT II
## NEGLIGENT MISREPRESENTATION

31. UNION repeats and re-alleges each and every allegation set forth in paragraphs 1 through 17 and incorporates them herein by reference.

32. ABS in the course of its business gathered and supplied false and inaccurate information regarding the *CAPE AFRICA* by continuing to issue classification and statutory certificates for the vessel and otherwise maintaining the classification status of the vessel despite actual or constructive knowledge that the *CAPE AFRICA* was not fit and suitable to carry cargo and persons safely from the port of departure to the port of destination and in open seas.

33. ABS negligently, recklessly, willfully and wantonly gathered and provided false information in the form of issuing various certificates and other documentation and

representations for the *CAPE AFRICA* prior to the loading of cargo and its ocean voyage from Ponta Da Madeira, Brazil bound for Kashima, Japan in April 2004.

34. ABS negligently, recklessly, willfully and wantonly extended a dry-docking survey of the *CAPE AFRICA* until June 30, 2004.

35. ABS negligently, recklessly, willfully and wantonly failed to gather the information necessary to make the determination to extend the dry-docking survey of the *CAPE AFRICA* until June 30, 2004.

36. ABS was at all times material hereto aware that its various certificates, documentation and other representations are widely and justifiably relied upon by insurers such as UNION, brokers, charterers, governmental agencies, and the public in general and would be relied upon by UNION for the purpose of insuring the *CAPE AFRICA*.

37. UNION reasonably and justifiably relied upon ABS's surveys, inspections, approvals, certificates, documentation, representations and false information concerning the suitability of the *CAPE AFRICA* for its intended purposes, including ocean going transportation. UNION reasonably and justifiably relied upon ABS to survey and inspect the *CAPE AFRICA* in accordance with its own Rules, international standards, and statutory requirements and to withdraw classification and statutory approval or otherwise restrict the vessel from carrying iron ore cargoes, if the vessel was not fit to do so.

38. UNION reasonably and justifiably relied on ABS to develop, administer, and implement effective standards and Rules for vessels such as the *CAPE AFRICA* and to detect the condition which caused the structural failure and to withdraw classification and statutory approval or otherwise prevent or restrict such vessels from carrying iron ore

cargoes if such vessels were not fit to do so.

39.  ABS knew or should have known that its negligent, reckless, willful and wanton provision of false information imperiled the insured risk and property of UNION and others.

40.  As a result of the foregoing negligent misrepresentation and negligent provision of business information, the *CAPE AFRICA* was allowed to load the cargo of iron ore in its unsafe and unseaworthy condition resulting in damages to the vessel, abandonment of the vessel by its crew, and ultimately salvage of the vessel.

41.  ABS knew or should have known that its negligent, reckless, willful and wanton survey of the *CAPE AFRICA* and by extending a dry-docking survey of the *CAPE AFRICA* to June 30, 2004, that UNION justifiably relied on ABS' classification of the *CAPE AFRICA* when UNION provided and maintained insurance on the *CAPE AFRICA*.

42.  As a result of the foregoing, Plaintiff suffered damages and continues to suffer damages in an amount to be determined at trial but presently estimated to exceed $15,295,644.24, plus reasonable attorneys' fees, costs, expenses, and interest.

43.  As a result, UNION is entitled to recover damages from ABS.

WHEREFORE, Plaintiff, UNION INSURANCE COMPANY LTD., demands judgment against Defendant, AMERICAN BUREAU OF SHIPPING, for the amount of Plaintiff's damages, together with in interest, costs, reasonable attorneys' fees, as well as such other and further relief that this Court may deem just and proper.

Dated: New York, New York
October 16, 2007

                    DeOrchis, Wiener & Partners, LLP
                    Attorney for Plaintiff
                    UNION INSURANCE COMPANY LTD.

By: _____
                    William E. Lakis (WL-9355)
                    61 Broadway, 26th Floor
                    New York, New York 10004-1480
                    (212) 344-4700
                    Our File: 8103-3

TO:    Hill Rivkins & Hayden LLP.
        45 Broadway, Suite 1500
        New York, NY 10006
        Attn.: Gerard W. White, Esq.